RECEIVED
JAN 2 4 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DIAMOND SERVICES CORP. | CIVIL ACTION NO. 10-0177 |
| VERSUS | JUDGE DOHERTY |
| OCEANOGRAFIA SA DE CV | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Pending before this Court are two motions: (1) "Motion for Clerk's Entry of Default Judgment" [Doc. 140] filed by plaintiff Diamond Services Corporation ("Diamond"), and (2) Motion to Set Aside Entry of Default [Doc. 152] filed by defendant Oceanografia S.A. de C.V. ("Oceanografia"). Diamond seeks to confirm a default entered against defendant CON-Dive, LLC ("CON-Dive") by the Clerk of Court for damages allegedly sustained by Diamond as set forth in the Second Amended Complaint filed on July 27, 2011. Diamond seeks a judgment in the amount of $12,711,005.04 from CON-Dive, which has not filed an answer in this case. Defendant Oceanografia seeks to set aside the preliminary entry of default against its co-defendants, the non-appearing CON-Dive, on grounds CON-Dive was not properly served with the summons and complaints.

For the following reasons, Diamond's Motion for Clerk's Entry of Default Judgment" [Doc. 140] is DENIED, and Oceanografia's Motion to Set Aside Entry of Default [Doc. 152] is GRANTED.

I. **Factual and Procedural Background**

Plaintiff Diamond sets forth the following factual scenario for the case:[1]

On June 21, 2002, owner of the M/V Kristen Grace, Plaintiff, entered into a Bareboat Charter Agreement with Defendant Oceanografia S.A. de C.V. ("Oceanografia") and delivered to Oceanografia the M/V Kristen Grace pursuant to the charter. From that point forward, Oceanografia used the vessel and paid charter hire to Plaintiff.

On November 30, 2006, at the request of Oceanografia, the parties purportedly assigned to CON-Dive, a company owned and/or effectively controlled by Oceanografia and Ing. Amando Yanez Osuna, (herein referred to as "Yanez") the bareboat charter signed on June 21, 2002. Despite this purported assignment, which was for reasons unknown to Plaintiff, the vessel subject to the charter continued to be used solely by Oceanografia. No charter was ever executed between CON-Dive and Oceanografia. On January 23, 2008, Yanez purchased 100% of the capital stock of CON-Dive. In addition, Yanez used the assignment of the M/V Kristen Grace charter to CON-Dive as a means of secreting liabilities of Oceanografia. At no time did Yanez ever intend for the M/V Kristen Grace to be used by CON-Dive; rather, and despite any purported assignment, the vessel remained in the possession and control of Yanez and Oceanografia. Yanez and Oceanografia commingled funds, and Yanez operated Oceanografia and CON-Dive as single business enterprises to the detriment of Plaintiff.

Subsequent to November 30, 2006, Oceanografia and Plaintiff agreed to renew said charter for a period of one year, on the same terms and conditions executed on June 21, 2002. This one-year extension was from December 31, 2006 through December 31, 2007. Once said one-year extension expired, Plaintiff and Oceanografia agreed to the chartering of the M/V Kristen Grace on a month-to-month basis, pursuant to the same terms and conditions of the charter executed on June 21, 2002.

Invoices were sent to both CON-Dive and Oceanografia, and while CON-Dive made several initial payments, all subsequent payments were made by Oceanografia and/or Yanez. The last payment received from Oceanografia was on May 5, 2009 in the amount of $150,000.00. Even after said payment, Oceanografia was still in arrears with regards to charter hire owed. Both CON-Dive and Oceanografia are jointly and severally liable for the entire amount owed. At all relevant times, Oceanografia retained possession and complete control of the M/V Kristen Grace. Furthermore, based on the misrepresentations of Yanez, and Oceanografia that payment would be

---

[1] The facts as recited herein are taken in their entirety from Diamond's motion to confirm the default judgment. CON-Dive has not made an appearance in the case, and, therefore, has not challenged the factual scenario as set forth by Diamond.

forthcoming, Plaintiff continued to allow Oceanografia to maintain possession of the M/V Kristen Grace subsequent to May 5, 2009.

Despite not being the owner and contractually prohibited from doing such, Yanez and/or Oceanografia: 1) On January 19, 2007, caused a mortgage to be recorded on the M/V Kristen Grace to HSBC in the amount of $3,294,000.00; 2) January 10, 2008, caused a fleet mortgage to be recorded that included the M/V Kristen Grace to Morgan Stanley, for approximately $300,000,000; and September 17, 2009, caused a mortgage to be recorded on the M/V Kristen Grace in favor of D. F. Deutsche Forfait S.R.O., in the amount of $16,500,000.

On September 28, 2009, after repeated demands for payment of accrued hire, Diamond Services proceeded to Mexico and reclaimed the M/V Kristen Grace. It was at such time, Plaintiff became aware of extensive damage to the M/V Kristen Grace caused by Oceanografia and during its charter of the vessel. Defendants were contractually bound to redeliver the M/V Kristen Grace in the same good order and condition, ordinary wear and tear excepted, as when delivered. Said damages to the M/V Kristen Grace while in the possession, custody, control, and charter of the Defendants, were a result of negligence of the Defendants, their agents, employees, or other persons for which they are liable for.

The Defendants were placed in default by correspondence dated December 22, 2009, in accordance with the renewed Bareboat Charter Agreement. The Defendant's breaches include, but not limited to: 1) Failure to tender the amounts owed for hiring the said charter; 2) Failure to maintain insurance coverage as more specifically described in the said Bareboat Charter Agreement; 3) Failure to maintain or renew the USF&G bond required under said Bareboat Charter Agreement; and 4) Failure to return the vessel in good condition.

Diamond sued Oceanografia in this Court on February 8, 2010. On June 21, 2010, Diamond filed an Amending Complaint adding Otto Candies, L.L.C., Candies Family Investments, L.L.C., and Zurich American Insurance Company. On July 27, 2011, plaintiff filed its Second Amending Complaint removing defendants Candies Family Investments, L.L.C. and Zurich American Insurance Company as parties, but adding Amado Yanez and CON-Dive as defendants.

When CON-Dive did not file its answer within the delays prescribed by law, Diamond requested that the Clerk of Court enter a preliminary default against CON-Dive, which the Clerk

entered on October 11, 2012 [Doc. 138]. Diamond filed the instant motion to confirm the default judgment on November 13, 2012; thereafter, co-defendant Oceanografia opposed the motion [Doc. 153], and filed a stand-alone Motion to Set Aside Default [Doc. 152]. Both motions are ripe for consideration.

## II.     Law and Analysis

### 1.     Standing

The first issue this Court must address is whether Oceanografia has standing to oppose the motion filed by Diamond and to seek to set aside the preliminary entry of default against Diamond's co-defendant, CON-Dive. This Court agrees with Oceanografia that standing exists. Although this Court was unable to find cases within the Fifth Circuit so holding, other courts have held a defendant against whom liability has been alleged jointly and/or severally has standing to challenge an entry of default against a co-defendant. In *Rodriguez v. Irwin*, 2011 WL 737316 (E.D.N.C. 2011), the court stated:

> The court found that because the plaintiff had alleged that all the defendants acted jointly and as each other's agents, the appearing defendant had demonstrated an injury in fact and had standing to challenge the entry of default against non-appearing defendants. Similarly, here, a judgment against Chappell is executable against Irwin Naturals by virtue of the theory of joint liability alleged in the amended complaint. Thus, Irwin Naturals has standing to oppose entry of default, because it has shown (1) injury in fact (Irwin Naturals is subject to a default judgment against Chappell), (2) causation (the entry of default judgment against Chappell if not challenged) and (3) redressability (challenging the entry of default may remedy exposure to liability for default judgment).

(internal citations omitted). *See also Sack v. Seid*, 2002 WL 31409573, at *2 (N.D. Ill. 2002) (appearing defendant had standing to challenge entry of default against non-appearing defendants); *see also In Re Uranium Antitrust Litig.*, 617 F.2d 1248, 1256 n.32 (7th Cir. 1980) (non-defaulted

defendants demonstrated injury in fact and had standing to challenge entry of default judgment where alleged joint and several liability subjected the non-defaulting defendants to execution of the default judgment).

In the instant case, Diamond alleges in its Second Amended Complaint that Oceanografia and CON-Dive were part of the same "single business enterprise" [Doc. 103, ¶¶ 11 & 31], and Diamond alleges in its Motion for Default Judgment that "CON-Dive and [Oceanografia] are jointly and severally liable for the entire amount owed." [Doc. 140, pg. 3].[2]

Considering the foregoing, this Court concludes liability has been alleged against Oceanografia and CON-Dive jointly and severally, and Oceanografia therefore has standing to challenge the default judgment entered against its co-defendant, CON-Dive.

### 2. Motion for Default Judgment [Doc. 140]

Diamond seeks a default judgment against CON-Dive pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure, which states:

> (b) Entering a Default Judgment.
>
>> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who

---

[2] A review of the pleadings in this case shows Diamond has alleged claims of, *inter alia*, negligence and, potentially, breach of a charter agreement. At this early stage of the litigation, it is impossible for the Court to know the true nature of the claims alleged. No one contests that joint and several liability is alleged against CON-Dive and Oceanografia; indeed, Diamond has not filed a reply brief challenging the assertion made by Oceanografia in that respect. Therefore, this Court accepts, for the purposes of the instant motions, Diamond's assertion that joint and several liability has been alleged.

Notwithstanding the foregoing, to the extent the claims alleged in this case are couched under the general maritime law, the concept of true comparative fault might or might not apply. This Court makes no determination regarding whether CON-Dive and Oceanografia are, or can be, truly jointly liable under the governing law, but for the purposes of this motion, and specifically, with respect to the issue of standing, this Court concludes Oceanografia has demonstrated it has standing to challenge the default judgment, and Diamond has not refuted that contention.

is neither a minor nor an incompetent person.

Fed. R. Civ. P. 55(b)(1).

The Fifth Circuit has recognized the seriousness of a default judgment. See, e.g., *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir. 1992) ("Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, 'even a slight abuse [of discretion] may justify reversal.'"), *citing Williams v. New Orleans Pub. Serv.*, 728 F.2d 730, 734 (5th Cir.1984), *quoting Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981). Indeed, the Fifth Circuit has held that a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001), *citing Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.1996). In fact, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis*, 236 F.3d at 767, *citing Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n.*, 874 F.2d 274, 276 (5th Cir.1989). Thus, the Fifth Circuit has noted, federal courts generally disfavor default judgments, preferring to resolve disputes according to their merits. *Harper McLeod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 393 (5th Cir. 2001), *citing Lindsey v. Prive Corp.*, 161 F.3d 886, 892 (5th Cir.1998). The Fifth Circuit has held a district court must set aside a default judgment as void if it determines that it lacked personal jurisdiction over the defendant because of defective service of process. *Harper McLeod*, 260 F.3d at 393, *citing Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir.1988).

In the instant motion, Diamond argues CON-Dive is not a minor, incompetent person, military personnel, or the United States of America or its agent, and Diamond's claim is for a sum certain, to wit, $12, 711,005.04, which sum has been verified under oath by Eugene H. Darnell, III,

Diamond's CPA, via the filing of Mr. Darnell's sworn Affidavit. Diamond also argues CON-Dive was properly served with the Summons and Complaint, Amending Complaint, and Second Amended Complaint pursuant to Rule 4(h)(1) of the Federal Rules of Civil Procedure.

By way of response, CON-Dive has filed an opposition to the Motion for Default Judgment, as well as a stand-alone Motion to Set Aside Default, in which Oceanografia argues CON-Dive was not properly served pursuant to either Louisiana state or federal law, and the default judgment entered by the Clerk of Court on October 11, 2012 should be set aside.

Thus, both the motion for default judgment and the motion to set aside default turn on the issue of whether CON-Dive was properly served. CON-Dive is a limited liability company ("LLC"). Service on limited liability companies is governed by the same rules applicable to corporations. *See, e.g., Feline Instincts, LLC v. Feline Future Cat Food, Inc.*, 2010 WL 4942188 (N. D. Tex. 2010).

Rule 4(h) of the Federal Rules of Civil Procedure provides the rules for serving a corporation, as follows:

> **(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
>     **(1)**    in a judicial district of the United States:
>
>         **(A)**    in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
>         **(B)**    by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or

>   (2)   at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h). Rule 4(e)(1), in turn, allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed.R.Civ.P. 4(e)(1). Thus, under Rule 4(h), there are only two methods of serving a limited liability company located in the United States, as follows.

### a. Service under Louisiana law

First, a plaintiff may effect service under state law. Louisiana law provides that service of process on a domestic or foreign limited liability company is made by personal service on any one of its agents for service of process. *See* La.Code Civ. P. art. 1266(A), 1232.[3] Article 1266 further

---

[3] Article 1266 states:

Art. 1266. Limited liability company

>   A. Service of citation or other process on a domestic or foreign limited liability company is made by personal service on any one of its agents for service of process.
>
>   B. If the limited liability company has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made by any of the following methods:
>
>>   (1) Personal service on any manager if the management of the limited liability company is vested in one or more managers or if management is not so vested in managers, then on any member.
>>
>>   (2) Personal service on any employee of suitable age and discretion at any place where the business of the limited liability company is regularly conducted.
>>
>>   (3) Service of process under the provisions of R.S. 13:3204, if the limited liability company is subject to the provisions of R.S. 13:3201.

La. C. Civ. P. Art. 1266 (West 2013).

>   Article 1232 states:

provides that, "[i]f the limited liability company has failed to designate an agent ... or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent," service of process may be made by any of the following methods:

> (1) Personal service on any manager if the management of the limited liability company is vested in one or more managers or if management is not so vested in mangers, then on any member.
>
> (2) Personal service on any employee of suitable age and discretion at any place where the business of the limited liability company is regularly conducted.
>
> (3) Service of process under the provisions of R.S. 13:3204, if the limited liability company is subject to the provisions for R.S. 13:3201.[4]

A plaintiff may alternatively make personal service on the secretary of state, or a designated person in his office, after the process server certifies his inability to make service in accordance with Article 1266. La.Code Civ. P. art. 1267.[5]

Here, Diamond's bare-bones allegations concerning service is that Diamond "properly

---

Art. 1232. Personal service

Personal service is made when a proper officer tenders the citation or other process to the person to be served.

La. C. Civ. P. Art. 1232 (West 2013).

[4] La. Code Civ. P. art. 1266 (West. 2013).

[5] Article 1267 [which applies the exact language used in Article 1262 to limited liability companies] states:

Art. 1267. Same; service on secretary of state

If the officer making service certifies that he is unable, after diligent effort, to have service made as provided in Article 1266, then the service may be made personally on the secretary of state, or on a person in his office designated to receive service of process on limited liability companies. The secretary of state shall forward this citation to the limited liability company at its last known address.

La. Code Civ. P. art. 1267 (West 2013).

served" CON-Dive by delivering the complaints to CON-Dive "at its mailing address." Diamond also attaches a reference sheet from the Louisiana Secretary of State listing CON-Dive as an LLC, with a mailing address of "c/o Scott Peck, 601 Poydras Street, Suite 2775, New Orleans, LA 70130," and naming three officers: Raymond W. Freeman, Jr., Richard R. Foreman, and Richard B. Stowell.

Oceanografia argues Diamond attempted service by leaving the summons and complaint with a receptionist or other unknown person at the law firm of Lugenbuhl, Wheaton, Peck, and Rankin. Oceanografia argues that, upon information and belief, Mr. Peck is a partner in the law firm of Lugenbuhl, Wheaton, Peck, and Rankin, and the address to which Diamond mailed the summons and complaints is the address of the Lugenbuhl, Wheaton, Peck, and Rankin law firm. However, Oceanografia argues there is no evidence Mr. Peck is or was a registered agent for service of process for CON-Dive. Indeed, there is no allegation in Diamond's motion that Diamond served the summons and complaints on "any one of [CON-Dive's] agents for service of process." Rather, Diamond's allegation is that it merely served the summons and complaints by delivering copies of same to Con-Dive "at its mailing address."[6]

When service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity. *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980). Here, this Court concludes Diamond has not satisfied its burden of showing that it served an agent for service of process for CON-Dive pursuant to Louisiana law. Therefore, Diamond has not shown it effected proper service on CON-Dive under Rule 4(h)(1)(A).

    b.  **Service on officer, managing or general agent, or agent authorized to**

---

[6] Diamond does not allege that CON-Dive "failed to designate an agent for service of process," or that there "is no registered agent by reason of death, resignation, or removal," or that Diamond was "unable, after due diligence, to serve the designated agent."

receive service of process

The second manner in which service can be effected on a limited liability company pursuant to Rule 4(h)(1) is "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *See* Fed.R.Civ.P 4(h)(1)(B). *See also Pellerin-Mayfield v. Goodwill Industries*, 2003 WL 21474649, *1, *1 (E.D.La. 2003) (J.Vance). The rule also "contemplates that, in addition to delivering a copy of the summons and complaint to the registered agent of a corporation, certain statutes may require that a copy of the summons and complaint be sent by mail to the defendant [company] as well." *Id.* at n. 2.

Here, Diamond has not demonstrated that it delivered a copy of the summons and complaints to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process on behalf of CON-Dive. Rather, Diamond alleges only that it served CON-Dive by mailing a cope of te summons and complaints to CON-Dive's "mailing address." Oceanografia has successfully challenged this alleged service by arguing Diamond mailed a copy of the summons and complaints to an unidentified employee of the Lugenbuhl, Wheaton, Peck, and Rankin law firm, whom Oceanografia argues has not been identified as an authorized agent for service of process of CON-Dive. In the face of Oceanografia's argument, this Court concludes Diamond has not satisfied its burden of showing that it effected proper service on CON-Dive under Rule 4(h)(1)(B).

Under the foregoing facts, this Court concludes the plaintiff has not carried his burden to establish DON-Dive was properly served, and a default judgment under such circumstances would not be proper. *See, e.g., Recreational Properties, Inc. v. Southwest Mortg. Service Corp.*, 804 F.2d


of process, the judgment is void and the district court must set it aside."). *See also Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999) ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void and must be set aside under Federal Rule of Civil Procedure 60(b)(4)"), *citing Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 412 (5th Cir.1998). Therefore, this Court concludes Diamond has not carried its burden of showing it is entitled to the requested, and the Motion for Default Judgement [Doc. 140] is DENIED.

3. **Motion to Set Aside Default [Doc. 152]**

In addition to opposing Diamonds motion to confirm the default judgment, Oceanografia filed a stand-alone Motion to Set Aside the Default against its co-defendant, CON-Dive. In its motion, Oceanografia seeks to set aside the default judgment entered against its co-defendant, CON-Dive, for essentially the same reasons it opposes Diamond's motion for default judgment, however, Oceanografia adds an analysis of the factors set forth by the Fifth Circuit in considering the set-aside issue. Again, this Court concludes Oceanografia has standing to seek to set aside the default judgment entered by the Clerk of Court against co-defendant CON-Dive, for the same reasons discussed earlier in this ruling.

Rule 55(c) of the Federal Rules of Civil Procedure states "[t]he court may set aside an entry of default for good cause. . . ." The Fifth Circuit has identified three factors important to the determination of whether good cause has been shown, to wit: (1) whether the default was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious defense is presented. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992), *citing United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir.1985). These factors


*citing United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir.1985). These factors are not "talismanic," and "[t]he ultimate inquiry remains whether the defendant shows 'good cause' to set aside the default." *CJC Holdings*, 979 F.2d at 64, *citing Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 184 (5th Cir.1992). The district court need not consider all of these factors. *Id.* The Fifth Circuit has stated:

> Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of "good cause" to set aside a default. That decision necessarily is informed by equitable principles.

Matter of Dierschke, 975 F.2d 181, 184 (5th Cir. 1992).

The Fifth Circuit has emphasized that entries of default are serious; "where there are no intervening equities[,] any doubt should ... be resolved in favor of the movant to the end of securing a trial upon the merits" *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003), *citing Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir.2000).

The Court will examine the three factors.

### a. Whether the default was willful

The Fifth Circuit has noted a "willful default" is an "intentional failure" to respond to litigation. *In re OCA, Inc.*, 551 F.3d 359, 371 (5th Cir. 2008), *citing Lacy*, 227 F.3d at 292. This Court cannot say CON-Dive's failure to answer the lawsuit was wilful, where Diamond has not demonstrated it properly served CON-Dive with a copy of the summons and complaints pursuant to either Louisiana or federal law. Considering the foregoing, this factor weighs in favor of setting aside the default.

### b. Whether setting the default aside would prejudice Diamond

The Fifth Circuit has noted "[t]here is no prejudice to the plaintiff where the setting aside of

589 F.2d 772, 778 (5th Cir. 2009). Here, setting aside the default would not prejudice Diamond, it would merely require Diamond to prove its case against CON-Dive. Accordingly, this factor weighs in favor of setting aside the default.

### c. Whether a meritorious defense is presented

Oceanografia argues the following with respect to this factor:

In this case, Con-Dive has a meritorious defenses. As stated above, the Second Amended Complaint does not allege any specific act or omission on the part of Con-Dive which caused or contributed to the alleged damages. Further, the complaint does not state that there was a contract or charter between Diamond Services and Con-Dive. In addition, the complaint explicit states, "No charter was ever executed between Con-Dive and OSA." (R.Doc. 103, ¶18). While the complaint alleges that Con-Dive was part of a single business enterprise, such an allegation is not a cause of action. Therefore, in the absence of a stated cause of action, Con-Dive cannot be liable to Diamond Services for any alleged damages.

Further, the damages sought are preposterous in amount and unsupported by evidence. Diamond seeks a default judgment of $12 million. Yet the only evidence offered in support of a such a massive figure is the affidavit of Eugene Darnell, an accountant hired by Diamond. Darnell does not even profess to have personal knowledge of the events in suit, stating as the only basis for his affidavit that he had "reviewed the complaints filed in this matter and the contract that serves as the basis for Diamond Services' claim in this matter." See Doc. 140-2, at para. 3. Darnell does not identify the "contract" to which he refers, and it is clear that his only role was to perform a mathematical exercise, calculating charter hire, late charges and interest, and monies allegedly expended by Diamond for service-of-process efforts in Mexico, including attorneys' fees. See *Id.*, at paras. 4-7. He does not explain why or how Con-Dive is liable for these alleged damages under the unnamed contract or otherwise. Appended to Darnell's affidavit is a one-page summary of calculations. Included in the summary is a line-item for "vessel repairs" in the amount of $2,118,423.45. No invoices, proof of payment, nor even an itemization of the alleged repairs is provided. Darnell does not mention the repairs in his affidavit and does not even claim to have reviewed the underlying documents relating to them.

The calculations summary also shows that Diamond seeks charter hire through April 30, 2012. Diamond states itself, however, that it regained possession of the vessel post- charter in 2009. Darnell does not explain how charter hire could be owed for another three years.

another three years.

Most surprising of all, in this the only affidavit offered in support of Diamond's request for a $12 million default judgment against Con-Dive, there are precisely zero references to Con-Dive. To say the least, the affidavit does not demonstrate that Diamond is entitled to a judgment against Con-Dive in the amount of $12 million or any other sum. Because Con-Dive has meritorious defenses to the claims asserted against it, entry of default is not appropriate.

This Court need not conclude whether CON-Dive will succeed on its defense; rather, it must merely conclude CON-Dive has presented a defense that has a chance of succeeding. After consideration of the record before it, and noting the Fifth Circuit's preference to resolve disputes according to their merits, this Court concludes Oceanografia has successfully demonstrated CON-Dive should be allowed to present its defense to Diamond's claims on the merits.

Considering the foregoing, the Motion to Set Aside Entry of Default [Doc. 152] filed by defendant Oceanografia is GRANTED.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that the "Motion for Clerk's Entry of Default Judgment" [Doc. 140] filed by plaintiff Diamond Services Corporation is DENIED.

IT IS FURTHER ORDERED that the Motion to Set Aside Entry of Default [Doc. 152] filed by defendant Oceanografia is GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 24 day of January, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-15-